624 A.2d 492

**STATE of Maryland**

v.

**Frederick Roy LEE.**

**No. 131, Sept. Term, 1992.**

Court of Appeals of Maryland.

May 11, 1993.

322

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, on brief), for petitioner.

R. Steven Friend, on brief, Cumberland, for respondent.

M. Albert Figinski, Louise Dean Williams for Maryland Criminal Defense Attys. Ass'n, amicus curiae.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

We granted certiorari to review the suppression of narcotics evidence seized pursuant to a prospective or anticipatory search warrant. The warrant took effect after a confidential informant, acting under police direction, arranged a purchase from a suspected drug dealer; tests identified the purchased substance as LSD after the dealer's arrest.

On December 9, 1991, State Police Trooper Jack Mathew presented an affidavit and application for a search warrant to a judge of the District Court sitting in Allegany County. After recounting his police training and experience in narcotics investigations, the affiant averred that: 1) Frederick Roy Lee reportedly lived in a mobile home on Route 3, Pine Hollow Road, in Rawlings; 2) a confidential informant, or C.I. # 18–2970, had that day informed the police that Lee possessed the illegal drug LSD; 3) the informant stated that Lee "is supposedly receiving" more of the drug on the same day; 4) "[t]his C.I. is aware of Freddy Lee being in possession of LSD though another individual who has indicated that he can purchase LSD for the C.I."; 5) the confidential informant would arrange to have this "unwitting" individual purchase LSD from Lee at about 11:30 p.m. that evening; 6) Lee had been convicted of possession of marijuana with intent to distribute in September 1988; and 7) the Cumberland City Police Department had received two anonymous reports in October 1991 that Lee was involved in the distribution of LSD.

Trooper Mathew's application requested that there issue a search and seizure warrant for Lee's home that would become valid upon the purchase of LSD by the unwitting

intermediary using money supplied by the police. The warrant itself sanctioned a search of the premises, and the arrest of persons violating narcotics laws there, only "after a purchase of LSD is confirmed by C.I. # 18–2970 as having occurred on or about December 09, 1991."

Mathew then launched the sting. He met his confidential informant at a convenience store in McCoole; the officer first searched the informant to determine that he carried neither drugs nor money, and gave him a $10 bill. The informant, followed by police, then drove to Keyser, West Virginia, to pick up the unwitting accomplice, his own brother. Still followed by police, the brothers returned to Maryland and drove to Lee's home. Because of a lack of cover, the police dropped back some distance, and were unable to watch events at the mobile home. The informant later reported that his brother entered the home, spent about 15 minutes inside, and then came out with two small tabs of cardboard paper, supposedly infused with liquid LSD, wrapped in aluminum foil. The two men returned to Keyser, with the police once more in train. The informant dropped off his brother, drove back to the store in McCoole, and delivered the foil-wrapped package to Trooper Mathew.

Although a portable kit was available for detecting LSD in the field, police did not test the two tabs at that point; Mathew stated that this was an oversight. Police executed the search of Lee's home at about 1:30 a.m. on the morning of December 10. There they seized controlled dangerous substances, drug paraphernalia, and the $10 bill. Testing done at the State crime laboratory at an unspecified later date confirmed that the two cardboard tabs purchased during the investigation did contain LSD.

Lee was charged with possession of LSD with intent to distribute, possession of LSD, possession of marijuana, and two counts of possession of drug paraphernalia. The Circuit Court for Allegany County (Leasure, J.) granted Lee's pre-trial motion to suppress the evidence seized from his home. Judge Leasure explained:

"[I]t is clear that the affidavit did not set forth a 'substantial basis ... for conclud[ing] that probable cause existed' for the issuance of the warrant. *Illinois v. Gates*.... The predicate for the requested warrant was that a drug sale 'might' take place after the warrant issued. Obviously whether or not a sale of drugs was made and, if so, by whom, cannot be ascertained from the 'four corners of the affidavit.'

\* \* \* \* \* \*

"Certain federal courts have adopted the concept [of the anticipatory search warrant]. (Citations omitted.) ... It should be noted, that the cases where the doctrine has been approved involved situations where the contraband to be seized 'is on a sure course to its destination, as in the mail.' (Citation omitted.) This is in contrast to the subject case in which the predicate of the search was a contemplated 'controlled buy' of CDS by an unwitting individual. The issuance of the search warrant should have occurred *after*, not before the sale, with the particulars of the sale set forth for consideration by the magistrate." (Emphasis in original.)

Similarly holding that the warrant was invalid because it was issued without probable cause, the Court of Special Appeals affirmed. *State v. Lee*, 93 Md.App. 408, 421, 613 A.2d 395 (1992). The court declined to rule on the constitutionality of anticipatory search warrants as such. *Id.*

Having been granted certiorari, the State now contends that such warrants should be upheld as valid generally, in keeping with the weight of authority among courts that have decided this question, and that the warrant in the instant case passes constitutional muster. The State argues that Mathew's affidavit showed "more than a substantial probability" that seizable property would be on Lee's premises when the warrant was executed. The State argues further that the warrant clearly required, as an additional safeguard, that the drug buy be confirmed before the search took place. Lee answers that Trooper Mathew's application and affidavit failed to establish the requisite

probable cause irrespective of the anticipated drug purchase arranged by police. We agree with Lee.

The Fourth Amendment of the federal constitution and its counterpart, Article 26 of the Maryland Declaration of Rights, require that no search warrant shall issue without probable cause. Probable cause means a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Birchead v. State*, 317 Md. 691, 700, 566 A.2d 488 (1989). In determining whether probable cause exists, the issuing judge or a magistrate is confined to the averments contained within the four corners of the search warrant application. *Birchead*, at 700, 566 A.2d 488; *Valdez v. State*, 300 Md. 160, 168, 476 A.2d 1162 (1984).

Review of the magistrate's decision to issue a search warrant is limited to whether there was a substantial basis for concluding that the evidence sought would be discovered in the place described in the application and its affidavit. *Birchead, supra*, 317 Md. at 701, 566 A.2d 488; *Potts v. State*, 300 Md. 567, 571, 575, 479 A.2d 1335 (1984). Whether information provided by an unidentified informant supports a finding of probable cause depends on a practical, non-technical "totality of the circumstances" approach that considers the informant's veracity, reliability, and basis of knowledge. *Gates, supra*, 462 U.S. at 233, 103 S.Ct. at 2329; *Winters v. State*, 301 Md. 214, 227, 482 A.2d 886 (1984); *Potts, supra*, 300 Md. at 575–576, 479 A.2d 1335.

Taking all of the circumstances into account, and with due deference to the issuing magistrate's determination, *see Birchead, supra*, 317 Md. at 701, 566 A.2d 488; *Potts, supra*, 300 Md. at 572–573, 479 A.2d 1335, we hold that probable cause did not exist to search Lee's mobile home. The factual predicate set out in Mathew's application for a warrant, to which we must confine our review, consisted essentially of a second-hand rumor: the officer merely recounted information about Lee passed through the

informant from his brother. The affidavit did not assert that the informant had previously given police truthful and reliable information about criminal activity. The affidavit did not assert that the informant's brother was truthful and reliable. The affidavit did not explain how the brother obtained the incriminating information about Lee. The affidavit did not describe how the brother concluded he could buy drugs from Lee. To be sure, since *Gates*, the law of search warrants no longer insists upon the strict two-prong test of an informant's knowledge and credibility derived from *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Yet the veracity and basis of knowledge of the informant clearly remain relevant to a probable cause determination. *Winters, supra*, 301 Md. at 227, 482 A.2d 886. The affidavit failed entirely to address either factor in the instant case.

The remaining averments in the affidavit did not make good its deficiency. Lee's three-year-old conviction for possession with intent to distribute marijuana bore only a tenuous relation to Mathew's investigation because of its remoteness in time. That 1988 conviction, representing an isolated, rather than protracted and continuous activity, did not provide reasonable grounds for concluding that Lee was operating as an LSD dealer in 1991. *See Connelly v. State*, 322 Md. 719, 730–734, 589 A.2d 958 (1991) (examining Maryland law in regard to stale probable cause); *Peterson v. State*, 281 Md. 309, 314–319, 379 A.2d 164 (1977) (same). The two anonymous reports to the Cumberland City Police lacked the same indicia of reliability discussed above with respect to the confidential informant and his brother. These reports simply compounded one unfounded allegation with others. Indeed, so sparse and speculative were the facts underlying the affidavit that the State in argument all but conceded that they did not constitute probable cause.[1]

---

1. As the State did not raise the question of a good-faith exception to the exclusionary rule for evidence seized pursuant to a defective

■ The State contends, rather, that Trooper Mathew's description of the prospective drug buy—with Lee as the seller—created sufficient probable cause for a so-called anticipatory warrant to issue. An anticipatory search warrant is "a warrant that has been issued before the necessary events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void." *United States v. Garcia*, 882 F.2d 699, 702 (2d Cir.1989). Such warrants typically issue when the police have orchestrated a controlled delivery of contraband which "is on a sure course to its destination" through the mails or parcel post. *United States v. Dornhofer*, 859 F.2d 1195, 1198 (4th Cir.1988); *United States v. Hale*, 784 F.2d 1465, 1468 (9th Cir.1986); *see People v. Glen*, 30 N.Y.2d 252, 331 N.Y.S.2d 656, 661, 282 N.E.2d 614, 617 (1972) (evidence for the prospective warrant must be strong that the particular possession of particular property will occur, and that the elements to bring about that possession are in progress and will result in possession at the time and place specified).

■ While a number of appellate courts have addressed the constitutionality of anticipatory warrants,[2] we need not reach that question. Trooper Mathew's prospective warrant failed by its own criteria. His application stated that the warrant would become valid "upon the purchase of a quantity of LSD." The warrant expressly was to take effect "after a purchase of LSD is confirmed." No such confirmation took place. Although a field test kit was available to identify the substance purchased from Lee, the police did not carry out the test. Police conducted the search of Lee's home without having first established, in

warrant under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), we deem it waived.

**2.** *See also United States v. Lowe*, 575 F.2d 1193 (6th Cir.1978); *Johnson v. State*, 617 P.2d 1117 (Alaska 1980); *Bernie v. State*, 524 So.2d 988 (Fla.1988); *Commonwealth v. Soares*, 384 Mass. 149, 424 N.E.2d 221 (1981); *State v. Engel*, 465 N.W.2d 787 (S.D.1991).

fact, that Lee had sold LSD to their confidential informant's unwitting brother. Police thus failed to fulfill the condition precedent on which the warrant was made contingent by its own terms. The search and seizure that subsequently took place was invalid.

■ This Court will not decide a constitutional issue except when the necessity to do so arises from the record before it. *Brittingham v. State*, 306 Md. 654, 660, 511 A.2d 45 (1986); *Jeffers v. State*, 203 Md. 227, 230, 100 A.2d 10 (1953); *Hammond v. Lancaster*, 194 Md. 462, 471–473, 71 A.2d 474 (1950). This record does not compel a constitutional review of anticipatory search warrants, which must await a future case.

JUDGMENT AFFIRMED, WITH COSTS.