701 A.2d 675

**David Frank McDONALD**

v.

**STATE of Maryland.**

**No. 99, Sept. Term, 1995.**

Court of Appeals of Maryland.

Oct. 20, 1997.

Chasanow, J., filed dissenting opinion in which Eldridge and Bell, JJ., joined.

454

Nancy M. Cohen, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

Gary E. Bair, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General, on brief), Baltimore, for appellee.

Argued before MURPHY, C.J.,* and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

In this appeal, we must decide whether the trial court erred in denying Appellant's motion to suppress evidence seized pursuant to a search and seizure warrant. Appellant maintains that the warrant was a defective anticipatory warrant, and was not supported by probable cause. Even if Appellant is correct that the warrant was flawed, or that it lacked probable cause, suppression of the evidence would not be an appropriate remedy in light of the principles set forth in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We further conclude that the verdict was supported with sufficient evidence to convince a trier of fact of the Appellant's guilt beyond a reasonable doubt. Accordingly, we shall affirm.

## I.

Appellant David McDonald was convicted of possession of a controlled dangerous substance with intent to distribute in violation of Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.) Article 27, § 286(a)(1),[1] and of possession of a controlled dangerous substance in violation of § 287(a). His conviction arose out of the following facts. During a random parcel

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

1. Hereinafter all statutory citations shall be to Maryland Code, (1957, 1996 Repl.Vol., 1997 Supp.) Article 27.

check in San Diego, California, on March 8, 1994, James Davis, a United Parcel Service (UPS) prevention loss representative opened a package and found a large quantity of marijuana. The address on the package was 4403 Jupiter Street, Rockville, Maryland, and the addressee was James Master. The affidavit in support of the search warrant indicated that the return address on the package label was Phil Waters, 1222 Reed Street, San Diego, California 92109. UPS officials contacted Detective Ron Featherly of the San Diego Police Department, who arranged to have the package sent to the Maryland State Police. Upon receipt of the package, Trooper Christopher Tideberg of the Maryland State Police inspected the contents and found eight separate bundles of marijuana. The packaging and contents weighed approximately eighteen pounds.

After he inspected the contents of the package, Trooper Tideberg confirmed from the United States Postal Inspection Service in San Diego that the return address on the package was an actual address in San Diego, California. He then initiated a subscriber check with Bell Atlantic and the Potomac Electric Power Company, and identified the service subscribers for 4403 Jupiter Street as Joe Lopez and Philip D. Porter. A further check of the names Joe Lopez, Phillip D. Porter, and James Master through the Maryland Motor Vehicle Administration (MVA) and Maryland Criminal Justice Information System (CJIS) databases failed to reveal any information about these individuals.

The next day, Trooper Tideberg applied to a judge of the District Court of Maryland, sitting in Harford County, for a warrant to search 4403 Jupiter Street, Rockville, Montgomery County, Maryland. *See Birchead v. State,* 317 Md. 691, 699, 566 A.2d 488, 491–92 (1989) (holding that a District Court judge has "territorial jurisdiction" to issue a search warrant for execution in any county of the State). As the basis for probable cause to search the premises, Trooper Tideberg represented in the affidavit: 1) his experience in drug enforcement; 2) the facts relating to the discovery of the package and its transportation from the State of California to Maryland;

**458**

and 3) the substance of his investigation of 4403 Jupiter Street.[2] He further stated in the affidavit:

The San Diego Police Department was advised by Corporal Welkner that the Maryland State Police Support Services Division Drug Interdiction Unit would attempt to conduct a controlled delivery of the package [to 4403 Jupiter Street].

The District Court judge issued the search and seizure warrant on March 11, 1994. The warrant authorized the police to search 4403 Jupiter Street and to seize items listed in

**2.** In pertinent part, the affidavit provided the following summary of the basis for finding probable cause to search 4403 Jupiter Street:

In summary, a United Parcel Service (UPS) package received by your Affiant from Detectives with the San Diego Police Department, San Diego California, via the United Parcel Service, contains approximately eighteen (18) pounds of suspected marijuana. The package is addressed to James Master 4403 Jupiter Street, Rockville, Montgomery County, Maryland 20853

That based on your affiant's, Tideberg's knowledge, training and expertise, your Affiant knows that eighteen (18) pounds suspected of marijuana is enough marijuana to indicate an intent to distribute marijuana. Your Affiant also knows that distributors of controlled dangerous substances keep and maintain debt lists and ledgers, list of names, addresses and/or telephone numbers of co-conspirators, photographs of controlled dangerous substances and other assorted paraphernalia. Distributors of controlled dangerous substances also keep scales (for weighing controlled dangerous substances), plastic baggies and other adulterants for preparing, packaging and distribution of controlled dangerous substances. Your affiant, Tideberg, knows that distributors of controlled dangerous substances will keep weapons in close proximity to defend themselves and their controlled dangerous substances. Your affiant, Tideberg, also knows that distributors of controlled dangerous substances use aliases for public records to [a]void positive identification. . . .

Therefore, as a result of your affiant's involvement in this investigation, and his expertise and experience in the investigation of narcotics and dangerous drugs, your affiant believes there is presently concealed within the aforesaid premises listed in the heading of this Affidavit those items which are set forth in Exhibit A, attached, which items constitute evidence that relate to the illegal distribution and possession with intent to distribute controlled dangerous substance, monies, records of accounts, ledgers, books, receipts, bank statements and other proceeds as defined by Article 27, Section 286, 287 and 297 of the Annotated Code of Maryland.

Exhibit A attached to the warrant.[3] Neither the warrant nor the application for the warrant conditioned the execution of the warrant on a controlled delivery, nor does the record reflect that the police were directed to condition the execution of the warrant on a controlled delivery of the package.

Nonetheless, the police prepared to deliver the package to the residence at 4403 Jupiter Street before they executed the warrant. Troopers Tideberg and Hurley installed an electronic monitoring device into the package, designed to emit a signal when the package was opened.[4] The police conducted a

---

**3.** Exhibit A to the "Application & Affidavit for Search and Seizure Warrant" read as follows:

*PROPERTY TO BE SEIZED*

1. Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.
2. Papers, tickets, notes, schedules, receipts, and other items relating to domestic and international travel.
3. Books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's checks, receipts, passbooks, bank checks, safe deposit box keys, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money.
4. United States Currency, precious metals, jewelry, and financial instruments, including stocks and bonds in amounts indicative of the proceeds of illegal narcotics trafficking.
5. Photographs of co-conspirators, of assets, and/or controlled substances.
6. Indicia of occupancy, residency, and/or ownership of the premises described above, including, but not limited to, utility and telephone bills, canceled envelopes, and keys.
7. Receipt for items evidencing the expenditure of the proceeds of drug distribution including, but not limited to, clothing, furniture, and electronic equipment.
8. Any electronic equipment, such as computers, telex machines, facsimile machines, currency counting machines, telephone answering machines, and related manuals used to generate, transfer, count, record and/or store the information described above. Additionally, computer software, tapes, and discs, and the contents therein, which contain the information generated by the aforementioned electronic equipment.
9. Any Controlled Dangerous Substances.

**4.** After the police delivered the package, they discovered that the electronic signaling device was not functioning properly.

fifteen- to twenty-minute surveillance of the residence before they attempted to deliver the package.

At 5:00 p.m. on March 11, 1994, Maryland State Police Trooper Roger W. Snyder, dressed as a UPS delivery person, attempted to deliver the package to 4403 Jupiter Street. No one answered the door. At 6:00 p.m., Trooper Snyder tried again. Appellant opened the door and accepted the package. He signed for the package, using the name Mickey Michaels,[5] and carried it inside the house.

Approximately one-half hour after the delivery, the police entered the house. In the hallway of the second floor, they discovered McDonald and Lopez in the process of opening the package. The police searched the residence. The warrant return stated that, among other things, the police seized documents, $780 in cash from a pair of trousers in a bedroom, rolling papers, a marijuana pipe, and the package containing the marijuana.

McDonald was indicted by the Grand Jury for Montgomery County for possession of a controlled dangerous substance with intent to distribute a controlled dangerous substance and possession of a controlled dangerous substance in violation of §§ 286(a)(1) and 287(a) respectively. He filed a motion to suppress the evidence seized under the warrant. The Circuit Court for Montgomery County held a hearing on September 16, 1994.

At the hearing, McDonald argued that a single package bearing the address of his residence was not alone sufficient to provide probable cause to issue the search warrant. He argued:

> [The warrant] is overly broad. There is nothing else, there is no surveillance—or surveillance that indicates any drug trafficking. There is no prior history of any of the people.

---

**5.** The defendant testified that he regularly used the names Mickey Michael and Mickey Michael Ratt in the course of his movie and music production business.

They can't even determine who the people are who are living there.

He also argued that the warrant was defective as an anticipatory warrant [6] because its execution was not conditioned upon the completion of a controlled delivery. Because of this flaw in the warrant, McDonald argued, there was no probable cause to believe that contraband would be at the house at the time the police executed the warrant.

The State argued that the search warrant was not an anticipatory warrant, and that the police had probable cause to search 4403 Jupiter Street without a controlled delivery of the package. The State argued that police experience, the interception of the package, the large quantity of drugs contained in the package, and the fact that the package was sent to a fictitious addressee all provided a basis for probable cause. In the alternative, based on *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the State argued that the police relied on the warrant in "objective good faith," and under those circumstances, suppression of the evidence is inappropriate.

The circuit court denied the motion to suppress. The court found that the warrant was not an anticipatory warrant because probable cause "exist[ed] regardless of the delivery of the package." The court stated:

[I]t ... is apparent to the Court that the reliability and the expectation that the contingent event, that is the delivery of the package, was very high with the reviewing Judge.

[W]hat was required here was the delivery by an appropriate delivery person to the address in question to which the package had been addressed. This is contrasted to anticipatory events such as a controlled buy of a controlled

---

6. An anticipatory search warrant is one which is issued before the necessary events have occurred to permit a lawful search of the premises. *United States v. Garcia,* 882 F.2d 699, 702 (2nd Cir.), *cert. denied sub nom. Grant v. United States,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). If those events never occur, the warrant is void. *State v. Lee,* 330 Md. 320, 328, 624 A.2d 492, 496 (1993). For a more detailed discussion of anticipatory warrants, *see infra* part III.

dangerous substance, which may or may not take place, and there are many reasons why they may or may not be successful.

That is much different than simply what I consider the ministerial duty of delivering the package and thereafter executing the warrant.

The reviewing court also found that the warrant was not overbroad, reasoning that the application requested permission to seize only those items related to the drug trade. The court continued:

Here, by candid admission by the State, the State is in reliance only upon the training and experience of the police officer and not upon any objective indicia received by that officer or that trooper ... in advance of the application for the warrant.

\* \* \* \* \* \*

[This application] is a request for that kind of item [or] material which is commonly found in the drug milieu and particularly the milieu surrounding the use of marijuana, the Court finds that the Schedule A in connection with the application and affidavit is not overly broad.

That the items that are indicated there are legitimate items that relate to, or could relate to the exercise of drug trade which would be consistent with the delivery of and receipt of, by someone at the address, [of] a large quantity of marijuana.

Appellant was convicted by a jury on both counts in the indictment. He appealed his conviction to the Court of Special Appeals, and we granted a writ of certiorari on our own motion prior to consideration by that court.

## II.

Appellant contends before this Court that the search warrant in this case was an anticipatory warrant and was *per se* unconstitutional under the Fourth and Fourteenth Amendments to the United States Constitution. He also asserts that

anticipatory warrants are impermissible under § 551,[7] the statutory provision governing the issuance and content of search warrants. Alternatively, Appellant contends that even if anticipatory warrants are permissible, this anticipatory warrant was invalid because its execution was not conditioned upon a controlled delivery, and because the package was not on a sure course for delivery to James Master. Finally, Appellant contends that the evidence was insufficient to sustain his conviction.

The State maintains that this warrant was not an anticipatory warrant, but was instead a search warrant supported by probable cause that could have been executed properly before the delivery of the package.[8] The State further contends that even if the warrant were invalid, the evidence was admissible because, under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the good faith exception to the exclusionary rule applies in this case.

We agree with the State that the warrant at issue in this case was not an anticipatory warrant. We also agree the *Leon* good faith exception applies in this case, and accordingly, that the evidence was properly admitted.

## III.

Although the Appellant argues that anticipatory warrants are *per se* unconstitutional because they are not supported by probable cause at the time they are issued, we need

---

**7.** This argument was not raised or decided below. Accordingly, we shall not address it. *See* Md. Rule 8–131(a).

**8.** At the suppression hearing and in its brief to this Court, the State argued alternatively that even if this warrant were anticipatory it would be permissible because the warrant was not in fact executed until the controlled delivery had taken place. The State abandoned this alternative position at oral argument before this Court. In response to the question from the bench, "Are you satisfied that it's not an anticipatory warrant?", the State responded, "I think it's not an anticipatory warrant." Although we are not bound by the State's characterization of the nature of the warrant, we agree with the State that the warrant was not anticipatory.

not decide this issue because this warrant was not an anticipatory warrant. The warrant states:

> I am satisfied that there is probable cause to believe that there is now being concealed certain property, namely books, ledgers, records, receipts, bank statements, and other traceable proceeds relating to illegal drug activities on the above-described and that the foregoing grounds for application for issuance of the Search Warrant exist and is attached hereto and made a part hereof.

A fair, nontechnical reading of the warrant leads to the conclusion that the issuing judge found probable cause that a drug trafficking operation was ongoing based on a single box containing eighteen pounds of marijuana and addressed to a fictitious addressee. Knowledge of the fact that the delivery of the package had not yet occurred, in conjunction with the statement, "I am satisfied that there is probable cause to believe that there is now being concealed," strongly suggests that the issuing judge found that there was probable cause to search 4403 Jupiter at the time of issuance without regard to the delivery of the package.

An anticipatory warrant is a search warrant " 'that has been issued before the necessary events have occurred which will allow a constitutional search of the premises.' " *State v. Lee,* 330 Md. 320, 328, 624 A.2d 492, 496 (1993) (quoting *United States v. Garcia,* 882 F.2d 699, 702 (2nd Cir.), *cert. denied sub nom. Grant v. United States,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989)); *see also United States v. Gendron,* 18 F.3d 955, 965 (1st Cir.) (Breyer, C.J.) (describing an anticipatory warrant as one that "takes effect, not upon issuance, but at a specified future time"), *cert. denied,* 513 U.S. 1051, 115 S.Ct. 654, 130 L.Ed.2d 558 (1994). Most courts have required that the record indicate that the warrant was conditioned upon the delivery of the package or upon the occurrence of a future event. *See United States v. Dennis,* 115 F.3d 524, 529 (7th Cir.1997) (upholding the issuance of an anticipatory warrant as valid when clear and narrowly stated conditions are contained in the affidavit supporting the warrant, even if those conditions are not stated on the face of the warrant); *United States*

*v. Leidner,* 99 F.3d 1423, 1430 (7th Cir.1996) (Wood, J., concurring) ("In order for an anticipatory warrant to satisfy the probable cause requirement, it must demonstrate that the contraband in question will be at the designated place at [a] time set for the search."), *cert. denied,* —— U.S. ——, 117 S.Ct. 1434, 137 L.Ed.2d 542 (1997); *United States v. Moetamedi,* 46 F.3d 225, 229 (2nd Cir.1995) (acknowledging that "clear, explicit, and narrowly drawn" conditions must be satisfied before the execution of an anticipatory warrant); *Gendron,* 18 F.3d at 965 (recognizing a valid anticipatory warrant must clearly and narrowly state when and under what conditions it becomes effective); *United States v. Tagbering,* 985 F.2d 946, 950 (8th Cir.1993) (reasoning that suppression of evidence follows if the execution of an anticipatory warrant precedes the controlled delivery); *Com. v. Gauthier,* 425 Mass. 37, 679 N.E.2d 211, 215–16 (1997) (concluding an anticipatory warrant is valid when clear and narrowly stated conditions are contained in the affidavit supporting the warrant even if not stated on face of warrant); *State v. Engel,* 465 N.W.2d 787, 791 (S.D.1991) (holding that anticipatory warrant may be valid when oral limitations by issuing magistrate restrict scope of warrant, and are coupled with clear references in affidavit to a contingent event, even if express limitations are not stated on face of the warrant). "Such warrants typically issue when the police have orchestrated a controlled delivery of contraband which 'is on a sure course to its destination' through the mails or parcel post." *Lee,* 330 Md. at 328, 624 A.2d at 496.

 There is no indication in this case that the warrant was issued in reliance on the occurrence of a future delivery of the package in question, or any other future event. The mere mention of a controlled delivery in the affidavit does not make a warrant anticipatory.[9] Although the affidavit refers to a

---

9. We do not find the fact that the troopers actually conducted a controlled delivery to be dispositive of whether the warrant was anticipatory. The controlled delivery might have been a tactical decision by the troopers.

statement made by a Maryland State Trooper to a San Diego, California police officer that the Maryland officers "would attempt to conduct a controlled delivery," nowhere does the affidavit indicate that the execution of the warrant was contingent upon the delivery of the package or any other event. Furthermore, the affiant does not aver that he or anyone else intended to deliver the package. The absence of any indication that the police intended to deliver the package further supports the conclusion that in issuing the warrant, the judge was satisfied that probable cause existed independent of any delivery. *See United States v. Moore*, 968 F.2d 216, 222 (2nd Cir.) (holding that a warrant was not "anticipatory" because an actual delivery of the packages to the residence was not an element in issuing judge's determination of probable cause), *cert. denied sub nom. Donahue v. United States*, 506 U.S. 980, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992).

Furthermore, if the warrant was premised on the belief that there was an ongoing drug operation at the residence, and the police were authorized to search and seize evidence relating to the ongoing drug operation, including "books, ledgers, records, receipts, bank statements, and other traceable proceeds," the probable cause must not have been based upon this particular shipment of marijuana. If there was probable cause to believe that a drug trafficking operation existed at 4403 Jupiter Street, the operation existed independent of the delivery of this particular package. Under this reasoning, there is nothing for the warrant to "anticipate" since " 'the necessary events ha[d] occurred which will allow a constitutional search of the premises' " at the time the warrant was issued. *Lee,* 330 Md. at 328, 624 A.2d at 496 (quoting *Garcia,* 882 F.2d at 702). For the aforementioned reasons, we conclude that the instant warrant was not an anticipatory warrant. Accordingly, in our review of this warrant, we shall consider the warrant to be a traditional search warrant rather than an anticipatory warrant.

## IV.

■ The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. CONST. amend IV. The probable cause standard is a "practical, non-technical conception." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). Probable cause means a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Minor v. State*, 334 Md. 707, 716, 641 A.2d 214, 218 (1994).

We review the judge or magistrate's decision to issue a search warrant to determine whether there was "a substantial basis for concluding that the evidence sought would be discovered in the place described in the application and its affidavit." *State v. Lee*, 330 Md. 320, 326, 624 A.2d 492, 495 (1993); *see Birchead v. State*, 317 Md. 691, 701, 566 A.2d 488, 492–93 (1989); *see also Potts v. State*, 300 Md. 567, 572, 479 A.2d 1335, 1338 (1984). In this regard, we observed in *Birchead:*

> The judge's task is simply to make a practical, common-sense decision whether probable cause exists; however, his action cannot be a mere ratification of the bare conclusions of others.

317 Md. at 701, 566 A.2d at 492 (quotation marks and citations omitted). The Supreme Court, in *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983), reiterated this standard of review, explaining "that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." The judge's determination that probable cause exists is entitled to great deference. *Id.* at 237, 103 S.Ct. at 2331; *see also United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984); *Lee*, 330 Md. at 326, 624 A.2d at 495.

The United States Supreme Court in *Leon* modified the Fourth Amendment's exclusionary rule to provide that evidence seized under a warrant subsequently determined to be invalid may be admissible if the executing officers acted in objective good faith with reasonable reliance on the warrant.

*Leon,* 468 U.S. at 919–20, 104 S.Ct. at 3419; *Connelly v. State,* 322 Md. 719, 729, 589 A.2d 958, 963 (1991). In *Leon,* the Court first announced and then applied the "good faith" exception to admit evidence seized by the police pursuant to a search warrant later found to lack probable cause. *Leon,* 468 U.S. at 922–25, 104 S.Ct. at 3420–22.

The Supreme Court in *Leon* did not suggest that evidence obtained under an invalid warrant is always admissible, but cautioned that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918, 104 S.Ct. at 3418 (footnote omitted). The Court held that "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926, 104 S.Ct. at 3422.

■ *Leon* sets out four circumstances in which the exclusionary rule remains the appropriate remedy:

(1) if the magistrate, in issuing a warrant, "was misled by information in an affidavit that the affiant knew was false or would have known was false except for a reckless disregard of the truth," [*see Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978);] or (2) "in cases where the issuing magistrate wholly abandoned his judicial role ... [so that] no reasonably well trained officer should rely on the warrant," [*see Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979);] or (3) in cases in which an officer would not "manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," [*see Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975);] or (4) in cases where "a warrant may be so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably

presume [the warrant] to be valid." [*Cf. Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) ].

*Connelly,* 322 Md. at 729, 589 A.2d at 963 (quoting *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421) (some alterations in the original). "The test under *Leon,*" as we stated in *Minor v. State,* 334 Md. 707, 641 A.2d 214 (1994), "is not whether there was probable cause, but whether 'a reasonably well trained officer would have known the search was illegal' despite the authorization from the judge." *Id.* at 717, 641 A.2d at 218 (quoting *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23).

In *Leon,* the Supreme Court suggested that reviewing courts have the discretion to decide the question of the officer's good faith, and the applicability of the objective good faith exception, without deciding whether probable cause is lacking under the Fourth Amendment. *See Leon,* 468 U.S. at 924–25, 104 S.Ct. at 3421. Justice White first proposed this approach in his opinion concurring in the judgment in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (White, J., concurring):

> When a Fourth Amendment case presents a novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates, there is sufficient reason for the Court to decide the violation issue *before* turning to the good-faith question. Indeed, it may be difficult to determine whether the officers acted reasonably until the Fourth Amendment issue is resolved. In other circumstances, however, a suppression motion poses no Fourth Amendment question of broad import—the issue is simply whether the facts in a given case amounted to probable cause—in these cases, it would be prudent for the reviewing court to immediately turn to the question of whether the officers acted in good faith. Upon finding that they had, there would generally be no need to consider the probable-cause question. I doubt that our Fourth Amendment jurisprudence would suffer thereby.

*Id.* at 264–65, 103 S.Ct. at 2346–47 (footnote omitted).

Many courts have adopted this approach,[10] concluding that "[a] determination that probable cause is lacking is not always necessary before reaching the issue of the objective good faith exception of *Leon.*" *United States v. Maggitt,* 778 F.2d 1029, 1033 (5th Cir.1985), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2920, 91 L.Ed.2d 548 (1986); *see United States v. Clutchette,* 24 F.3d 577, 580 (4th Cir.1994) (admitting evidence without determining validity of telephone warrants where officers acted in good faith); *United States v. Livesay,* 983 F.2d 135, 137 (8th Cir.1993) (applying *Leon* and concluding that "it is unnecessary to reach the question of whether probable cause existed for the issuance of the two search warrants"); *United States v. Moore,* 968 F.2d 216, 222 (2nd Cir.) (concluding it unnecessary to determine whether the issuing judge had "actual probable cause" when the good faith exception applies), *cert. denied sub nom. Donahue v. United States,* 506 U.S. 980, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992); *United States v. Corral–Corral,* 899 F.2d 927, 931–32 (10th Cir.1990) (*assuming* invalidity of warrant and applying *Leon* ); *United States v. Washington,* 797 F.2d 1461, 1468 (9th Cir. 1986) (holding it is unnecessary to reach the issue of whether the warrant was based on probable cause when *Leon* applies).

In *United States v. Maggitt,* 778 F.2d 1029 (5th Cir.1985), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2920, 91 L.Ed.2d 548 (1986), the United States Court of Appeals for the Fifth Circuit noted that in cases involving relatively well settled Fourth Amendment principles, such as those which question whether the attributed facts set forth in the affidavit rise to

---

**10.** The ultimate question of good faith *vel non* is a legal issue. *See United States v. Williams,* 3 F.3d 69, 71 n. 2 (3rd Cir.1993) ("[O]ur review of the district court's conclusion on that issue is plenary."); *United States v. Sager,* 743 F.2d 1261, 1265 (8th Cir.1984) (concluding that because the standard is objective good faith, and not subjective good faith, where record is adequate, it is proper to address the issue for first time on appeal), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985); *United States v. Hendricks,* 743 F.2d 653, 656 (9th Cir.1984) (holding warrant invalid for lack of probable cause; *Leon* good faith determination appropriately made for first time on appeal). The standard is an objective one, and the State bears the burden of proof.

the level of probable cause, it is unnecessary to determine whether the warrant was issued on a showing of probable cause. *Id.* at 1033. As Justice White noted in his concurring opinion in *Gates,* in certain cases the issue is simply whether the facts in a given case amounted to probable cause. *Gates,* 462 U.S. at 265, 103 S.Ct. at 2347 (White, J., concurring). Similarly, this is a case in which the issue is whether these particular facts rise to the level of probable cause. Thus, for purposes of our analysis, we shall assume *arguendo* that this search warrant lacked probable cause to believe that the residence contained contraband or evidence of an ongoing drug operation. We must now consider whether the *Leon* good faith exception applies and permits the evidence to be admitted.

As *Leon* indicates, the "good faith" exception to the general rule of exclusion does not apply universally. Hence, the question is whether the warrant falls within any one of the four situations outlined by the Supreme Court in which reliance on the warrant would not be reasonable. Because none of the four circumstances set out in *Leon* apply, the application of the exclusionary rule is inappropriate.

Neither the first nor second exception of *Leon* has any application to the instant case. There is no suggestion or argument from McDonald or the State that the issuing judge was misled by information in the affidavit that the officer knew was false or would have known was false except for his reckless disregard for the truth. Nor is there anything in this record to suggest that the issuing judge wholly abandoned his judicial role in issuing the warrant.[11]

---

11. In the application and affidavit for the search warrant, Trooper Tideberg stated that the package weighed 18¼ pounds. At the suppression hearing, however, he testified that, upon chemical analysis, the marijuana weighed only nine pounds and that the discrepancy was due to the weight of the packaging. McDonald did not request a *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), hearing and the discrepancy in the weight was not an issue before the circuit court at the motion to suppress.

Addressing *Leon*'s third exception, the affidavit was not so lacking in indicia of probable cause that it was unreasonable for the officers to rely upon it. The warrant application contained several objective facts from which the officers could have reasonably concluded that there was probable cause to search 4403 Jupiter Street. The troopers were aware of the contents of the package, the package's weight, the delivery address, and the use of what appears to be a fictitious name. Armed with this information, a well-trained officer could have reasonably concluded that the warrant was legal.

The United States Court of Appeals for the Second Circuit reached a like conclusion in the case of *United States v. Moore*, 968 F.2d 216 (2nd Cir.), *cert. denied sub nom. Donahue v. United States*, 506 U.S. 980, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992). In *Moore*, the search warrant was based solely on the interception of two large UPS packages. Inside one of the packages the police had found a large cooler containing marijuana. *Id.* at 219. A subsequent warrant authorized the officers to search an apartment for records or documents relating to a drug scheme after the two packages were delivered to that apartment. The Second Circuit held that knowledge of "the contents of one of the packages, the packages' weight and the delivery address" provided sufficient indicia of

---

The idea that the magistrate was misled by information is raised solely by the dissent. In fact, *Franks v. Delaware* set out a procedure, requiring a detailed proffer from the defense before the defendant is even entitled to a hearing to go behind the four corners of the warrant. Under *Franks*, when a defendant makes a substantial preliminary showing that the affiant intentionally or recklessly included false statements in the supporting affidavit for a search warrant, and that the affidavit without the false statement is insufficient to support a finding of probable cause, the defendant is then entitled to a hearing on the matter. The burden is on the defendant to establish knowing or reckless falsity by a preponderance of the evidence before the evidence will be suppressed. Negligence or innocent mistake resulting in false statements in the affidavit is not sufficient to establish the defendant's burden. *Id.* at 171–72, 98 S.Ct. at 2684–85; *see also United States v. Corral–Corral*, 899 F.2d 927, 933–34 (10th Cir.1990) (no showing that warrant issued in reliance on a deliberately or recklessly false affidavit; record unclear whether defendant even requested a *Franks* hearing.)

probable cause to justify the officers' reliance on the warrant. *Id.* at 222. The court continued:

> As the district court noted, the search will survive the *Leon* test if the UPS shipment reasonably permitted the officers to rely upon [the issuing judge's] finding of probable cause that documents or records of drug trafficking were in the apartment. We believe that it did. The size of the shipment alone compellingly indicated that the intended recipient was a drug dealer. Dealers need to keep records. The address of the shipment and the need for a signature by the recipient strongly suggested that the apartment was used at the very least as a collection and redistribution point. It was, therefore, a likely repository of drug records.

*Id.* at 223. In the instant case, there were sufficient indicia of probable cause to justify reliance by the troopers upon the warrant.

We turn next to *Leon*'s fourth exception, which provides that suppression remains appropriate when a warrant is " 'so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume [the warrant] to be valid.' " *Connelly v. State,* 322 Md. at 729, 589 A.2d at 963 (quoting *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421) (alterations in the original). The warrant identifies the place to be searched, the items to be seized, and the statute allegedly violated. We conclude that the warrant was not so facially deficient that a police officer could not reasonably conclude that it was valid. *See Brown v. District of Columbia,* 638 F.Supp. 1479, 1488 (D.D.C.1986).

In sum, the officers who executed the search warrant at 4403 Jupiter Street were entitled to rely on the District Court judge's determination of probable cause, and this reliance was objectively reasonable.

## V.

Finally, we turn to Appellant's contention that the evidence was insufficient to support his convictions. We begin

our analysis by observing that "it is not the function or duty of the appellate court to undertake a review of the record that would amount to, in essence, a retrial of the case." *State v. Albrecht*, 336 Md. 475, 478, 649 A.2d 336, 337 (1994). Rather, we review the evidence in the light most favorable to the State, *id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), giving due regard to the trial court's finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses. *Id.* We do not measure the weight of the evidence; rather we concern ourselves only with whether the verdict was supported with sufficient evidence, direct or circumstantial, which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt. *Id.* at 478–79, 649 A.2d at 337.

▮▮▮▮▮▮▮ Appellant was convicted of possession of a controlled dangerous substance with intent to distribute, and of possession of marijuana. Possession is defined in § 277(s) as "the exercise of actual or constructive dominion or control over a thing by one or more persons." To prove control, the " 'evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited . . . drug in the sense contemplated by the statute, *i.e.*, that [the accused] exercised some restraining or directing influence over it.' " *State v. Leach*, 296 Md. 591, 596, 463 A.2d 872, 874 (1983) (quoting *Garrison v. State*, 272 Md. 123, 142, 321 A.2d 767, 777 (1974)); *see Taylor v. State*, 346 Md. 452, 457–58, 697 A.2d 462, 465 (1997). The accused must have knowledge of both the presence and the general character or illicit nature of the substance. *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041, 1047 (1988). "[S]uch knowledge may be proven by circumstantial evidence and by inferences drawn therefrom." *Id.*

We conclude that the facts presented at trial could fairly convince the trier of fact of McDonald's guilt beyond a reasonable doubt. McDonald personally signed for and took delivery of the package containing the marijuana. When the search

warrant was executed, nearly thirty minutes after the delivery, McDonald was found standing above the package with the marijuana exposed. We hold that the evidence was sufficient to support the verdict.

*JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*

ELDRIDGE, CHASANOW and BELL, JJ., dissent.

CHASNOW, Judge, dissenting.

The primary issue before the Court is whether the judge in the instant case erred in holding that the search warrant was a valid non-anticipatory warrant because probable cause could be based solely on the in-transit package of marijuana, and not be contingent on the delivery of that package. This is an important issue since, as this case demonstrates, more efforts are being made by package delivery agencies to detect drug shipments. The majority seems to acknowledge that other courts are far from uniform as to when an in-transit drug package furnishes probable cause for pre-delivery search of the place the package is to be delivered. The probable cause issue was so important we granted certiorari on our own motion prior to consideration of this case by the Court of Special Appeals. Instead of analyzing the issue and giving guidance to lower courts, the majority decides the case on an issue not reached by or decided by the trial judge.

## FAILURE TO DECIDE PROBABLE CAUSE

When reviewing the validity of a search based on a search warrant, the preferred practice, for a trial court as well as for an appellate court, is to first determine if the warrant contains probable cause and, if not, then determine if there was good faith adequate to justify the search under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). By first determining whether the warrant contained probable cause, appellate courts will give guidance both to lower courts and to law enforcement agencies. The majority may be

conveying the message that judges do not have to make difficult decisions concerning probable cause; if the probable cause issue is difficult for a judge to decide, the judge may simply conclude that police officers applying for the warrant, who presumably know less about probable cause than judges, must have acted with objective good faith. If other judges reviewing search warrants follow our lead, the determination of probable cause may become an unnecessary anachronism. A reviewing judge will merely have to ascertain if the search warrant is so totally lacking in any indicia of probable cause that there could be no objective good faith by the applicant. There is also the danger that some judges or magistrates may follow this Court's approach to the instant case when they issue search warrants and not feel the need to carefully analyze whether probable cause exists as long as the police are acting in good faith. This danger will be even more likely to occur if judges and magistrates believe that the adequacy of the probable cause for the search warrant will not be reviewed or scrutinized. At the very least, we should explain to other judges reviewing and issuing search warrants with difficult probable cause issues like the one side-stepped by this Court today that they should not follow the approach of this State's highest Court to merely look to the good faith of the police officers seeking the warrant.

## PROBABLE CAUSE

In the instant case, the State acknowledges that the search warrant was not an anticipatory warrant, that it was not conditioned on the future delivery of the marijuana, and that by its terms the warrant could have been executed as soon as it was signed. The State contended, however, that the search warrant contained probable cause for an immediate pre-delivery search irrespective of the anticipated future delivery. There are circumstances where an intercepted shipment of drugs coupled with police observations, knowledge and expertise can provide probable cause for a pre-delivery search warrant. This case, however, is not one of them.

The majority does not say this warrant contains probable cause; unfortunately it says nothing on the issue. For many of the same reasons that I question the objective good faith of the officers executing this search warrant, I do not believe that the application for the search warrant in the instant case contained probable cause. The package of marijuana at issue did not indicate a very large volume of marijuana. The wrapped package was sixteen inches wide by sixteen inches deep by sixteen and a half inches tall. Other than the address on the package, there is not one scintilla of evidence that the address or any of the persons believed to reside at that location had any prior association with drugs or drug activities. Surveillance prior to the delivery of the package did not indicate any drug activity at that address, and there is no record of drug activity by anyone associated with the address. Moreover, the fact that the addressee of the package was not an occupant of the residence might be an indication that the package is misaddressed or the occupants were merely accommodating the addressee. Additional surveillance or search of relevant records should be required in order to furnish some further evidence of a drug operation at a particular address that might indicate the probable presence of incriminating evidence or contraband.

As a result of the majority's decision, unscrupulous people may now be able to procure a police search of anyone's house, office, etc. by anonymously mailing a small package of drugs to a fictitious addressee at the target address and calling in an anonymous tip to the package delivery service or postal inspectors to check the package. Although not relevant to the legal issues, it is interesting to note that not only was it doubtful that probable cause existed to believe there was evidence of drug dealing in the house before the marijuana delivery, no such evidence was found as a result of the search. There were no drug dealer's records, scales, packaging materials, etc. seized, and the only papers taken were those that indicated who resided in the apartment. Further, the only incriminating evidence outside of the marijuana was a marijua-

na pipe and rolling papers indicative of personal use rather than distribution.

## OBJECTIVE GOOD FAITH

In order to uphold the search in the instant case, the majority finds that the law enforcement officers who applied for and then executed this search warrant acted with objective good faith. In so finding the majority is not reviewing a good faith finding of the trial court; instead, it is making its own finding on an issue not decided by the trial judge. There may be instances in which there is no real dispute about the facts or any inferences that could be drawn from those facts where an appellate court reviewing a search warrant can conclude both that the lower court erred in finding probable cause for the warrant, as well as make its own finding that the search was valid because it is clear that the police acted with objective good faith. *Cf. Connelly v. State,* 322 Md. 719, 589 A.2d 958 (1991). Where, however, as in the instant case there is a need for factual findings and there are disputed factual inferences relevant to a finding of "good faith," we should remand the case to the trial court for a full evidentiary hearing to determine "good faith."

In order to decide the case on objective good faith rather than on probable cause, the majority must have assumed for the purpose of its analysis that the search warrant did not contain probable cause. The majority then made a finding that the police believed that the warrant contained probable cause and that the police acted with objective good faith on that belief. I have grave doubts about whether the officers in the instant case acted with good faith, and the record is inadequate for this Court to make an affirmative finding of objective good faith. The most we should do is remand the issue to the trial court for a further factual hearing and determination of good faith. If the officers had a good faith belief that the search warrant would uncover evidence of drug dealing, why did they delay executing the warrant until they delivered the marijuana to the premises? The officers had the search warrant for the premises, and they had possession of

the package of drugs addressed to the premises, so there was no need to delay the search unless their real, unstated purpose was to catch someone in actual possession of the marijuana they would deliver.

In *Leon,* the Supreme Court recognized:

"If exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect ... it must alter the behavior of individual law enforcement officers or the policies of their departments.... We ... conclude that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."

468 U.S. at 918, 104 S.Ct. at 3418, 82 L.Ed.2d at 695. In the instant case, exclusion of the marijuana seized would further the purposes of the exclusionary rule. It is a bad policy for police officers to claim to be seeking an immediate search warrant for evidence of drug dealing when what they are really seeking is an anticipatory warrant to catch someone "red handed" with a package of marijuana to be delivered after the warrant is issued and thus avoid the very rigid requirements for an anticipatory search warrant. The State acknowledges that neither this Court, nor the Supreme Court, has yet upheld the validity of anticipatory search warrants. *See State v. Lee,* 330 Md. 320, 329, 624 A.2d 492, 496 (1993) ("This record does not compel a constitutional review of anticipatory search warrants, which must await a future case."). In fact, a case presenting this issue is set for argument before this Court. *See Kostelec v. State,* No. 17, September Term, 1997. The warrant in the instant case is a typical anticipatory warrant. In *Lee,* we noted that "[anticipatory] warrants typically issue when the police have orchestrated a controlled delivery of contraband which 'is on a sure course to its destination.'" 330 Md. at 328, 624 A.2d at 496 (citations omitted). Many courts have recognized anticipatory warrants, but they have imposed rigid requirements which are not contained in the instant warrant. *See, e.g., U.S. v. Ricciardelli,* 998 F.2d 8 (1st Cir.1993); *U.S. v. Garcia,* 882 F.2d

699 (2d Cir.), *cert denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).

The State vociferously argues, and this Court finds, that a non-anticipatory search warrant was sought for the items in the house at the time the warrant was issued and that the police were not seeking an anticipatory search warrant for the marijuana to be delivered after the search warrant was issued. That finding is at least questionable based on the record. Even before they applied for the search warrant, the officers had possession of the undelivered package of marijuana. Immediately after obtaining the search warrant, the officers installed an electronic monitoring device in the package of marijuana designed to emit a signal when the package was opened. They went to the location to be searched and waited because no one was home to receive the package of marijuana. After delivering the package of marijuana, they further waited for an additional one-half hour so there was plenty of time to open the package. Are these the actions of officers who believe there is presently probable cause to search and intend to execute a non-anticipatory search warrant for the paraphernalia of a drug dealer, or are these the actions of officers intending to execute an anticipatory search warrant to catch someone with marijuana after the marijuana is delivered?

If the officers actually believed in good faith that they were executing a non-anticipatory warrant and would find incriminating evidence independent of the anticipated marijuana delivery, why did they not execute the search warrant as soon as they received it? At that point, they had possession of the marijuana package to bolster whatever evidence of a drug operation they found in the house. The officers obviously intended to and did delay their search until after the marijuana's delivery for the purpose of catching someone "red handed" with the drugs they were delivering. This is an indication the officers had doubts about whether they would find incriminating evidence of distribution prior to the marijuana delivery, as well as an indication that the primary purpose of the search warrant was to catch someone with the marijuana they would later deliver. If the officers in the instant case were seeking

an anticipatory search warrant, they should have told that to the issuing judge and seen if the judge would issue an anticipatory warrant. It should not be considered to be objective good faith when law enforcement officers seek a non-anticipatory warrant for evidence of drug dealing with questionable probable cause and immediately thereafter use the non-anticipatory warrant as an anticipatory warrant to set up a drug delivery and seizure. The most logical assumption is that the officers knew that the non-anticipatory warrant, which the majority assumes lacked probable cause, would be unlikely to uncover evidence of drug dealing; so after getting the warrant, they delivered the evidence of drug dealing to the premises. Indeed, as already noted, there was no evidence of drug dealing on the premises until the officers delivered it.

*U.S. v. Ricciardelli*, 998 F.2d 8 (1st Cir.1993) is instructive on the issue before this Court. The defendant in *Ricciardelli* was the subject of an investigation of child pornography. His name appeared on a list of child pornography customers. Postal inspectors sent the defendant a catalog from which he ordered several pornographic videotapes, one of which was mailed to him. After mailing the tape, the postal inspectors obtained a search warrant which was found to be invalid because it did not condition the search upon the arrival of the videotape at the home, but rather it was conditioned upon the defendants receipt of the tape regardless of where that occurred. The prosecution argued that, even if the warrant was invalid, the good faith exception should apply. The Court of Appeals for the First Circuit found no objective good faith and what they said is equally applicable in the instant case:

"The law was settled that the conditions governing the execution of anticipatory warrants must be explicit, clear, and narrowly drawn. The instant warrant plainly did not satisfy these criteria; and, furthermore, the principal omission in the warrant—the lack of any requirement that the contraband arrive at the premises—was both glaring and easily correctable. Examining the postal inspectors' actions in this light, it is crystal clear that they could, and should, have asked the magistrate to condition the search of appel-

lant's home on the delivery of the videotape there; failing both to insert this condition and to recognize the consequences of its omission constituted objectively unreasonable conduct. It follows, then, that attempting to execute an anticipatory search warrant bereft of such a limiting condition fell 'outside the range of professional competence expected' of federal agents." (Citations omitted). 998 F.2d at 16.

There are other indications of a lack of good faith in the instant case which bear mentioning since they are ignored in the majority's finding of objective good faith. In *Leon*, the Supreme Court gave examples of when there can be no objective good faith; one of them was when the judicial officer issuing the warrant was misled by an affidavit that "the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 922–23, 104 S.Ct. at 3420–21, 82 L.Ed.2d at 689–99; *see also Minor v. State*, 334 Md. 707, 713, 641 A.2d 214, 216 (1994). In the instant case, there is a reasonable probability that the judicial officer was misled by vital information in the warrant that the affiant knew was false or "would have known was false except for his reckless disregard of the truth." Information brought out at the suppression hearing showed that in his affidavit the officer may have intentionally or recklessly doubled the amount of marijuana to be delivered.

The only way this search warrant could contain probable cause prior to the delivery of the marijuana package would be if the warrant established that the recipients were large scale drug dealers with an operation of sufficient scope that they would probably have records, scales, paraphernalia, etc. At the suppression hearing, the officer testified that prior to obtaining the search warrant, "I weighed the package prior to the delivery. It was [in] packaging material, in all it weighed 18 pounds. But taking the marijuana away from the packaging material it turned out to be about nine pounds." There was other testimony that the marijuana weighed about nine pounds. In his affidavit the officer both by implication and express statement indicates to the judicial officer that there

was twice as much marijuana as there actually was. The affiant's first statement about quantity is true, although perhaps not candid; he stated: "your Affiant then weighed the box containing the marijuana and found it to weigh eighteen and one quarter pound (18¼ lb)." The affidavit then goes on to state: "In summary, a United Parcel Service (UPS) package received by your Affiant from Detectives with the San Diego Police Department, San Diego California via the United parcel Service, contained approximately eighteen (18) pounds of suspected Marijuana." This clearly indicates 18 pounds of marijuana, not an 18 pound package with nine or less pounds of marijuana. The significance of this distortion is seen by a key sentence in the warrant: "That based on your Affiant's, Tideberg's knowledge, training and expertise, your Affiant knows that eighteen (18) pounds of suspected marijuana is enough marijuana to indicate an intent to distribute marijuana." The judicial officer might have been willing to accept that 18 pounds of marijuana was enough to indicate a large scale operation which would be expected to have records, etc., but might not accept that only half that amount, i.e., nine pounds of marijuana, was enough to indicate that any recipient operated a large scale drug operation with books, records, etc. The determinations about whether the judicial officer was misled and whether the affiant knew his affidavit was false or acted with reckless disregard of the truth should be made in the first instance by the trial court after a full hearing and not by an appellate court.

Further indication that the issuing judge might have been misled is found in the majority's statement that "nowhere does the affidavit indicate that the execution of the warrant was contingent upon the delivery of the package or any other event. Furthermore, the affiant does not aver that he or anyone else intended to deliver the package." 347 Md. 452, 466, 701 A.2d 675, 681 (1997). The affiant obviously intended to deliver the package after getting the warrant. The majority should not make a finding of objective good faith that ignores the reasonable inference from this record that the officers probably intended that the non-anticipatory search

warrant be used as an anticipatory warrant and that they probably doubted that they would find incriminating evidence of drug dealing prior to their delivery of the marijuana. Those doubts proved to be right; no such evidence was found.

There are dangerous aspects to the majority's opinion. There is the danger that if this State's highest Court when reviewing a search warrant avoids a difficult probable cause analysis and only examines whether the police acted with objective good faith, then there might be a terrible temptation for judges reviewing search warrants or for judges issuing search warrants to do the same thing. There is also the danger that the police in effect can get an anticipatory search warrant as long as they can make an "objective good faith" application for a non-anticipatory search warrant, even if the application lacks probable cause. I respectfully dissent.

Chief Judge BELL and Judge ELDRIDGE have authorized me to state that they join in the views expressed in this dissenting opinion.