**Wilbert Hatcher FREELAND, et al.**

**v.**

**Francis B. CHILDRESS, et al.**

**No. WMN–99–3552.**

United States District Court,
D. Maryland.

Oct. 22, 2001.

Wilbert Hatcher Freeland, Pasadena, MD, pro se.

Monica Ffrench, Sykesville, MD, pro se.

Mark Holdsworth Bowen, Assistant Attorney General, Pikesville, MD, for defendants.

## MEMORANDUM

NICKERSON, District Judge.

Plaintiffs filed this pro se action pursuant to 42 U.S.C. § 1983, alleging violations of their federal civil rights and various state laws. Now before the Court are the parties' cross-motions for summary judgment. The motions are fully briefed and ripe for decision. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary and Defendant's motion will be granted.

## I. BACKGROUND

This case arises out of the execution of a search and seizure warrant at Plaintiffs Wilbert and Christine Freeland's residence on May 29, 1997, and the subsequent arrests and prosecutions of Plaintiffs Wilbert Freeland and Monica Ffrench, Mr. Freeland's mother-in-law, for violations of Maryland's Controlled Dangerous Substance Laws. The sole remaining defendant is Trooper First Class Francis Childress (hereinafter "Trooper Childress"), of the Maryland State Police.[1] Plaintiffs have brought federal claims pursuant to 42 U.S.C. § 1983 as well as various state law claims including negligence, defamation, and malicious prosecution. They seek compensatory damages of $10 million for alleged property damage and personal injuries, punitive damages of $10 million, attorneys' fees, and declaratory judgment. The following facts are relevant to Plaintiffs' claims and are undisputed, unless otherwise noted.

On January 22, 1997, Officer K. Nester of the California Highway Patrol stopped a pick-up truck registered to and operated by Wilbert Hatcher Freeland, Sr., of 901

---

1. Trooper Childress is being sued in his individual capacity. The other original defendants, "Town of Sykesville" and the Maryland State Police (then amended to Superintendent of the Maryland State Police), were dismissed from the case by orders of this Court.

W. Liberty Road, Sykesville, Maryland. Officer Nester searched the pick-up and recovered approximately 153 pounds of marijuana packaged in 34 bundles. Plaintiff Wilbert Freeland was arrested on criminal charges and was released on bail the following day. After Plaintiff Freeland's arrest, Deputy Sheriff Scott Corbin of the San Bernardino County, California, Sheriff's Department, took custody of the seized narcotics. Deputy Corbin sent 28 of the bundles to the Marijuana Eradication Team for immediate destruction, and retained the remaining 6 bundles for evidence at trial. These 6 bundles were also destroyed when they were no longer needed as evidence. See, Def.'s Opp. Mot., Ex. A (Affidavit of Scott Corbin, ¶¶ 1–5); see also Def.'s Mot. at Ex. 1A (Deputy Corbin's report).[2]

On January 27, 1997, Deputy Corbin contacted Trooper Childress and provided him with information related to the arrest of Wilbert Freeland in California. Trooper Childress then began an investigation of Mr. Freeland in Maryland. Trooper Childress learned that Mr. Freeland had committed several violations of controlled dangerous substance ("CDS") laws, as recorded in the Maryland Criminal Justice Information System, and that he had been under investigation for violation of narcotics laws, according to an entry in the Drug Enforcement Coordinating System ("DECS"). The FBI agent who had made the DECS entry advised Trooper Childress to contact a man by the name of Pete Campbell, who was "retired" and could provide additional information about Mr. Freeland. Trooper Childress now asserts that he assumed Mr. Campbell was retired from the FBI, see Def.'s aff. at ¶ 6, although that assumption was incorrect.[3]

Trooper Childress met with Pete Campbell on March 10, 1997. Campbell stated that he had been contacted by an "old informant" in early February, 1997, concerning Wilbert Freeland. The informant had told Campbell that Freeland had been distributing CDS in Baltimore for at least the past 3 years from two locations, one of which was the Culver Street Market, which Freeland owned. The informant also told Campbell that it was known "on the street" that Freeland had been arrested in California for transporting over 100 pounds of marijuana that Freeland had intended to transport back to Baltimore. The informant knew that Freeland owned approximately 10 acres of land in Sykesville, Maryland, and that Freeland's wife, Christine Evadny Freeland, worked at the Howard County Detention Center. The informant said that Mrs. Freeland had "Jamaican connections." The informant told Campbell that the last time he was with Wilbert Freeland was 1995, when Freeland received a package containing 50 pounds of marijuana through the U.S. mail.[4]

2. Plaintiffs argue that a portion of the marijuana seized from Mr. Freeland in California was not destroyed, but was subsequently sent to Maryland in the guise of a UPS package by California police officers in conspiracy with the Defendant. Plaintiffs provide no evidence to support this assertion, and both Defendant and Deputy Corbin deny any such scheme.

3. Plaintiffs have submitted copies of Mr. Campbell's job description and resume, which show that Mr. Campbell never worked for the FBI but rather served as a United States Probation Officer until 1995 and since then has worked as a Medicaid Fraud Analyst in the Office of the Attorney General in Baltimore. See, Pl.'s Mot. at Ex. 6. Rough notes taken by Trooper Childress at his meeting with Campbell indicate that Childress knew Campbell was a retired probation officer. See, Pl.'s Mot. at Ex. 3.

4. Plaintiffs contend that Campbell's informant never existed. See, Pl.'s Mot. at 13. In support of this theory, plaintiffs point only to the fact that Campbell had worked as a U.S.

Campbell told Trooper Childress that he had known the informant for many years, had obtained very accurate information from him in the past, and had no reason to disbelieve him. (Def.'s aff. at ¶ 8). Trooper Childress was able to verify Freeland's ownership of the Culver Street Market in Baltimore and property in Sykesville, as well as Mrs. Freeland's employment at the Howard County Detention Center and origins in Jamaica. *Id.* at ¶ 12. A Baltimore City Police Officer told Trooper Childress that the Culver Street Market was the site of drug activity.

On May 28, 1997, Trooper Childress received a telephone call from Officer Joe Morrison of the California Highway Patrol, who explained that his K–9 had alerted on a package at a California United Parcel Service ("UPS") facility, indicating that the package contained CDS.[5] The package was addressed to "Monica French, 901 W. Liberty Road, Sykesville, Maryland, 21784." Trooper Childress told Officer Morrison to allow the package to be shipped via UPS to Maryland.[6]

On May 29, 1997, the UPS facility in Frederick, Maryland, released the package into the custody of the Maryland State Police. At the police barracks, another K–9 alerted to the package, indicating the presence of CDS.[7] The package was not opened. *See,* Def.'s aff. at ¶ 17. Trooper Childress then applied for a search and seizure warrant for the package. In support of his application, Trooper Childress related the following information: (1) his own training and experience in CDS cases; (2) the report of Officer Morrison regarding his K–9's alert to the package and the suspicious features of the package; and (3) the circumstances of the K–9 alert on the package at the Maryland police barracks. *See,* Def.'s Mot. at Ex. 1B. Judge Beck of the Circuit Court of Carroll County, Maryland, approved and signed the warrant.

Upon opening the package pursuant to the warrant, Trooper Childress discovered approximately 45 pounds of suspected marijuana, bundled into 7 smaller packages that were each wrapped in plastic wrap and fabric softener sheets. Field and laboratory tests confirmed that the substance was marijuana. Trooper Childress then prepared two search warrant applications for 901 W. Liberty Road, Sykesville, Maryland.[8]

---

Probation Officer, not as an FBI agent as Trooper Childress had assumed. Mr. Campbell's job description and history, however, reveal that he was in a position to have informants with knowledge of CDS violations. *See,* Pl.'s Mot. at Ex. 6.

5. Several other features of the package indicated the presence of CDS, including the fact that it was a heavily-taped U–Haul box marked "Household Goods," sent Next–Day Air, and paid for in cash. Although the UPS form listed the sender as "Liberty Factory," when Officer Morrison called the phone number provided on the form, the phone was answered "Libby Glass." *See,* Def.'s Mot. at Ex. 1B (Report of Officer Morrison).

6. Plaintiffs contend that the package was not actually sent via UPS, but rather "airlifted" to Maryland as part of a conspiracy between Maryland and California law enforcement of-

ficers. Plaintiffs provide no evidence except that as of November 3, 2000, UPS could not provide any documentation of the tracking number for the package that was shipped in 1997. *See,* Pl.'s Mot. Ex. 6. Obviously, the absence of a tracking number three years after the fact does not create a genuine issue as to whether the package was shipped via UPS.

7. Plaintiffs contend that the K–9 handler reported to have conducted the search never worked for Maryland State Police. Plaintiffs base this assertion, however, on the fact that as of March 2001, that officer was not working at the Belair State Trooper barracks, *see,* Pl.'s Mot. at 11, which is not relevant.

8. A check of utility records had indicated separate utility service for the basement of the residence, suggesting that two separate war-

In support of the search warrant applications, Trooper Childress provided the following information: (1) Childress's own training and experience in CDS investigations; (2) the information related by Deputy Corbin concerning Wilbert Freeland's January 22, 1997 arrest in California; (3) the information communicated from Pete Campbell[9] regarding the informant's knowledge of Freeland's activities; (4) utility record checks for 901 W. Liberty Road, indicating that Wilbert and Christine Freeland (but no one named Monica French) were current residents; (5) criminal history of Wilbert Freeland for CDS violations; (6) corroboration of the informant's statements about Christine Freeland's Jamaican origins, her employment as a corrections officer, and drug activity at Culver Street Market; and (7) information about the marijuana discovered in the UPS package addressed to Monica French at 901 W. Liberty Road. *See,* Def.'s Mot. at Ex. 1C & 1D. Judge Beck approved and signed the warrants, indicating in handwriting underneath his signature that he authorized each warrant to be executed as "no-knock" warrants.

Trooper Childress asserts that Maryland State Police had planned to carry out a "controlled delivery" of the UPS package just prior to the execution of the search warrants. *See,* Def.'s aff. at ¶ 23. This plan would involve a police officer disguised as a UPS driver who would attempt to deliver the package under police observation. According to Trooper Childress, however, no controlled delivery was attempted because Maryland State Police had observed a real UPS driver delivering a different package to 901 W. Liberty Road shortly before the warrant was to be executed.[10] Trooper Childress claims that the police feared that another UPS delivery on the same day would arouse the occupants' suspicions and endanger officers' safety. *Id.* at ¶ 24. He further states that the ranking supervisors on the scene, Sergeant Michael College and Detective Sergeant Bruce Smith, made the decision to execute the warrants with no controlled delivery of the package. *Id.*

The initial entry of the residence was performed by members of the Maryland State Police Special Tactics Assault Team Element ("STATE"). These officers neither knocked on the door nor announced their presence before entering the house. It is undisputed that the STATE officers caused damage to the front door when they forced it open. Plaintiff Christine Freeland and her 16 year-old daughter, Plaintiff Massieka Holness, were the only people inside the residence. In an affidavit, Mrs. Freeland testifies that she had been lying down in the bedroom dressed only in her underclothes when the police barged in with their weapons drawn. She and her daughter were handcuffed and forced to the ground, and Mrs. Freeland was not permitted to get dressed.[11]

Trooper Childress did not participate in the initial entry of the home. Mrs. Freeland, however, testifies that once he was inside the house, Trooper Childress threatened her and her daughter with criminal

---

rants may be necessary to search the entire building. *See,* Def.'s aff. at ¶ 20.

9. In his warrant applications, Trooper Childress refers to Pete Campbell as a retired FBI agent. *See infra* note 3.

10. Plaintiffs dispute this assertion, claiming that no UPS delivery was made to the residence on that day, and pointing out that no

UPS package was recovered during the search of the premises. *See,* Pl.'s Reply at Ex. C & D (Affidavits of Christine Freeland and Massieka Holness).

11. Trooper Childress asserts that both Plaintiffs were fully clothed when he saw them in the living room. *See,* Def.'s aff. at ¶ 26.

charges if they did not reveal where "Mr. Freeland, the money, and the drugs" were hidden. *See,* Pl.'s Mot. at Ex. 13. Plaintiffs also claim that the police "ransacked" their home by tearing out the ceiling and various water pipes, but they do not provide any evidence of this property damage other then their own testimony. *Id.*[12]

No contraband was recovered from 901 W. Liberty Road. In an upstairs bedroom, officers discovered mail addressed to both "Monica French" and "Monica Ffrench," as well as women's clothing in the dresser drawers. Mrs. Freeland testifies that Monica Ffrench, who is her mother, had not lived in the house since December 1996, when she moved to Connecticut. *Id.* at ¶ 7. Plaintiff Ffrench testifies to the same. *See,* Pl's Mot. at Ex. 14.

On June 19, 1997, Trooper Childress prepared an Application for Statement of Charges against Monica French[13] for the offenses of attempted possession with intent to distribute marijuana and attempted possession of marijuana (Md.Code Ann. art. 27, § 290 (1957)). Trooper Childress avers that he prepared the application at the behest of the State's Attorney for Carroll County, Maryland. *See,* Def.'s aff. at ¶ 34. After Trooper Childress presented the application to the appropriate authorities, an arrest warrant issued. In October, 1997, Plaintiff Ffrench was arrested in Connecticut, detained, and extradited to Maryland. In 1999, the charges against Plaintiff Ffrench were dismissed.

In July, 1998, Wilbert Freeland was indicted by a Maryland grand jury on four charges: attempted possession of marijuana with the intent to distribute, attempt to maintain a common law nuisance, attempted possession of marijuana, and conspiracy to possess marijuana with intent to distribute. Trooper Childress did not participate in the filing of charges, nor did he appear before the grand jury that indicted Mr. Freeland. *See,* Def.'s aff. at ¶¶ 40–43. In March, 1999, Mr. Freeland stood trial on the charges, but the trial court granted Mr. Freeland's motion for acquittal at the close of the government's case.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving

---

**12.** Trooper Childress asserts that he observed damage to the front door but not to any other part of the residence. He testifies that he never spoke to Plaintiffs but that his superior officer did. *See,* Def.'s aff. at ¶¶ 27 & 29.

**13.** Trooper Childress used the name "French" rather than "Ffrench" (the spelling used by Plaintiff in this action) because the Maryland Criminal Justice Information System listed Monica Ffrench under "Monica French," and because the name on the UPS package and mail recovered inside 901 W. Liberty Road was "Monica French." *See,* Def.'s aff. at ¶ 35.

party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty,* 818 F.2d at 1128 (citing *Ash v. United Parcel Serv., Inc.,* 800 F.2d 409, 411–12 (4th Cir.1986)).

When both parties file motions for summary judgment, the court applies the same standards of review. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment—even where ... both parties have filed cross motions for summary judgment")(emphasis omitted), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co.,* 627 F.Supp. 170, 172 (D.Md.1985)(quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* 2d § 2720 (2d ed.1993)). *See also Federal Sav. and Loan Ins. Corp. v. Heidrick,* 774 F.Supp. 352, 356 (D.Md.1991). "[C]ross-motions for summary judgment do not automatically empower the court to dispense with the determination whether questions of material fact exist." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt,* 700 F.2d 341,

349 (7th Cir.1983), *cert. denied,* 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987). Both motions may be denied. *See Shook v. United States,* 713 F.2d 662, 665 (11th Cir.1983).

## III. DISCUSSION

### A. Constitutional Violations

#### 1. The Search Warrants for 901 W. Liberty Road

Plaintiffs claim that the search of their home on May 29, 1997, violated their Fourth Amendment rights because the warrants obtained by Trooper Childress were not supported by probable cause.[14] In particular, Plaintiffs allege that: (1) in his application for the warrants, Trooper Childress made false statements that were necessary for a finding of probable cause; (2) the warrants were anticipatory warrants that became void when the police failed to conduct a controlled delivery of the package; and (3) the warrants were the fruit of the search of the UPS package, which Plaintiffs claim was unconstitutional. For the reasons set forth below, the Court finds that Plaintiffs have failed to provide evidence for these claims sufficient to survive summary judgment.

 In determining whether probable cause exists to support the issuance of a search warrant, it is the task of the issuing judge to decide "whether, given all the circumstances set forth in the affidavit ... there is a fair probability that the contra-

---

**14.** Plaintiffs also allege that Trooper Childress violated their rights under the Eighth and Fourteenth Amendments, but the Court finds that only the Fourth Amendment is applicable here, as Plaintiff's claims concern probable cause for a search and seizure and two arrests.

band or evidence of the crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A fair probability means "less than prima facie proof, but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990). A magistrate's determination of probable cause should be paid "great deference" by reviewing courts. *Gates,* 462 U.S. at 236, 103 S.Ct. 2317 (*quoting Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)).

■ A facially valid search warrant will be found to violate the Fourth Amendment if it contains false or misleading statements that are "necessary to the finding of probable cause." *Wilkes v. Young,* 28 F.3d 1362, 1365 (4th Cir.1994) (*quoting Franks v. Delaware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). The party challenging the warrant must "make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks* at 156, 98 S.Ct. 2674. Although Plaintiffs have succeeded in showing that Trooper Childress included two false statements in the warrant applications, the Court finds that they were not material to a finding of probable cause.[15] Plaintiffs' other allegations of false statements, including their claim that the 45 pounds of marijuana recovered in Maryland was not shipped via UPS but instead "airlifted" as part of a conspiracy between California and Maryland law enforcement, are baseless and unsupported. *See, e.g., infra* notes 6 and 7; *see also, Franks* at

171, 98 S.Ct. 2674 (requiring that "allegations of deliberate falsehood or of reckless disregard for the truth must be accompanied by an offer of proof").

■ Plaintiffs also claim that the warrants for the search of 901 W. Liberty Road were anticipatory warrants that became void when no controlled delivery of the UPS package occurred. An anticipatory warrant is a search warrant " 'that has been issued before the necessary events have occurred which will allow a constitutional search of the premises.' " *State v. Lee,* 330 Md. 320, 328, 624 A.2d 492 (Md. 1993) (*quoting United States v. Garcia,* 882 F.2d 699, 702 (2nd Cir.1989)). "Most courts have required that the record indicate that the warrant was conditioned upon the delivery of the package or upon the occurrence of a future event." *McDonald v. Maryland,* 347 Md. 452, 464, 701 A.2d 675 (1997).

Neither Trooper Childress's applications nor the warrants themselves state that a controlled delivery of the package was planned or would be necessary to establish probable cause. Although Trooper Childress's own statements in the course of this lawsuit indicate that the police had intended to conduct a controlled delivery and then abandoned that plan, there is no evidence that Judge Beck relied on a controlled delivery as a condition precedent to a finding of probable cause. *See United States v. Moore,* 968 F.2d 216, 222 (2nd Cir.1992) (holding that a warrant was not "anticipatory" because an actual delivery of the packages to the residence was not an element in issuing judge's determina-

---

15. Trooper Childress inaccurately named Deputy Corbin as the arresting officer of Wilbert Freeland in California, where the correct name was Officer Nester. Trooper Childress also incorrectly referred to Pete Campbell as a retired FBI agent. *See infra* notes 3 and 9. Plaintiffs argue that this error implies that

Campbell could not have learned information from an informant; however, Campbell's resume and job description indicate that he was in a position to have contact with informants with knowledge of CDS activity in Maryland. *See* Pl.'s Mot. at Ex. 5.

tion of probable cause). Even without delivery of the UPS package to the occupants of 901 W. Liberty Road, Trooper Childress's warrant applications contained several other bases for establishing a "fair probability" that CDS laws were being violated on the property.[16]

■ Finally, Plaintiffs claim that the search warrants violated the Fourth Amendment because they were the fruits of an illegal search, namely, that of the UPS package. Under the fruit of the poisonous tree doctrine, probable cause may not be based on evidence seized in violation of the Fourth Amendment. *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The package at issue was subjected to a K–9 sniff and positive alert to CDS in a UPS facility in California. It was then shipped via UPS and picked up from the Maryland UPS facility by a Maryland State Police officer.[17]

■ The exertion of dominion and control over the package by the police was a seizure within the meaning of the Fourth Amendment. *Parish v. Peyton,* 408 F.2d 60, 63 (4th Cir.1969). A package in transit with a private carrier, however, may be detained on the basis of a reasonable suspicion that it contains contraband, pending further investigation directed toward establishing probable cause. *See United States v. Van Leeuwen,* 397 U.S. 249, 252–53, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); *Garmon v. Foust,* 741 F.2d 1069, 1072 (8th

Cir.1984). Here, the positive alert to CDS by the California K–9 sniff provided the Maryland police with reasonable suspicion, along with the other suspicious features of the package, that the box contained narcotics.[18] *See infra* note 5. Trooper Childress and his colleagues then conducted another K–9 sniff, with positive results, prior to obtaining a search warrant permitting him to open the box. Therefore, neither the seizure of the UPS box nor the search of the package pursuant to the warrant violated Plaintiffs' Fourth Amendment rights.

### 2. Execution of the Search Warrants

■ Plaintiffs claim that they suffered extensive property damage, personal injuries, and related financial and emotional distress as a result of alleged police misconduct in the execution of the search warrants of their home. The Court does not doubt that the unexpected entry of the STATE tactical unit into their home with weapons drawn was a deeply unnerving experience for Plaintiffs Christine Freeland and her daughter Massieka Holness, who were home alone. It is undisputed, however, that Trooper Childress neither participated in the initial entry of the house nor ordered the manner in which it was conducted. *See* Def.'s aff. at ¶¶ 24 and 25. Rather, the STATE team acted under the direction of the highest ranking officer present, not Trooper Childress, in carrying

16. Plaintiffs argue that insofar as the warrants were based on information from Campbell's informant, they are invalid because the information was stale. The Court must reject this argument, however, because the information about Mr. Freeland's activity was relatively recent and provided evidence of a continuing course of conduct (drug trafficking). *See, Peterson v. Maryland,* 281 Md. 309, 379 A.2d 164 (1977), *cert. denied,* 435 U.S. 945, 98 S.Ct. 1528, 55 L.Ed.2d 542 (1978).

17. The Court finds irrelevant Plaintiffs' argument that the identity of the particular Maryland State Police officer who picked up the package from UPS impinges on the legality of the seizure. *See,* Pl's Mot. at 9–10.

18. A sniff by a drug dog does not constitute a search within the meaning of the Fourth Amendment. *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

out the warrants that had been authorized as "No Knock" warrants.[19]

Given Trooper Childress's limited role in the entry and search of the house, Plaintiffs' evidence demonstrates that at most, Trooper Childress acquiesced in the conduct of the other officers as they detained and handcuffed Plaintiffs Christine Freeland and Massieka Holness, and that he threatened to bring criminal charges if they did not reveal where the "drugs and money" were hidden. *See,* Pl.'s Mot. at Ex. 13. Neither activity rises to the level of a constitutional violation. *See, e.g., Dalia v. United States,* 441 U.S. 238, 258, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979) (finding that "officers executing search warrants on occasion must damage property in order to perform their duty"); *Michigan v. Summers,* 452 U.S. 692, 701, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (holding that occupants may be detained while the warrant is executed on the premises).

### 3. Arrests and Prosecution of Wilbert Freeland and Monica Ffrench

Plaintiff Wilbert Freeland claims that Trooper Childress violated his Fourth Amendment rights by causing him to be charged with violations of four CDS laws without probable cause, resulting in great financial and emotional distress for Mr. Freeland and his family. Mr. Freeland further asserts that Trooper Childress conspired with others to have Mr. Freeland indicted by a Maryland grand jury and detained in California on a bench warrant issued in Maryland. Complaint at ¶¶ 43, 44, and 47. Plaintiffs have provided no factual basis for these allegations. Trooper Childress did not apply for charges against Mr. Freeland, testify before the grand jury, nor play any role in Mr. Freeland's incarceration in California, which arose out of the January 22, 1997, traffic stop and seizure of 153 pounds of marijuana from Mr. Freeland's truck.

Plaintiffs also claim that Trooper Childress should be held liable for filing criminal charges against Monica Ffrench. Plaintiffs claim that Trooper Childress filed for the charges knowing that they were unsupported by probable cause, since Monica French did not reside at 901 W. Liberty Road on May 29, 1997, and had never accepted delivery of the package containing 45 pounds of marijuana that was addressed to her there. Plaintiff Ffrench claims that as a result of being criminally charged, she suffered physical abuse and deprivation of medical care at the hands of authorities in Connecticut, where she was arrested and detained on a fugitive warrant. Complaint at ¶¶ 32–40. Plaintiffs also claim financial distress suffered by the entire family as a result of the criminal charges lodged against Plaintiff Ffrench. *Id.*

As a preliminary matter, Plaintiffs present no evidence of Trooper Childress's involvement with Plaintiff Ffrench's arrest in Connecticut, treatment by law enforcement authorities there, or extradition to Maryland.[20] Rather, State's Attorney Jer-

19. The Fourth Amendment's "knock and announce" requirement may be excused when exigent circumstances exist. *See, Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997); *United States v. Lalor,* 996 F.2d 1578 (4th Cir.1993); *Gould v. Davis,* 165 F.3d 265 (4th Cir.1998). Although the Court finds that under the law of this Circuit, Trooper Childress's warrant applications did not provide evidence of such circumstances sufficient to justify Judge Beck's authorization of a No–Knock entry, nothing in the record indicates that Trooper Childress requested a No–Knock entry or acted upon it in such a way to give rise to liability on his part.

20. Plaintiffs assert, with no factual basis, that Trooper Childress traveled to Connecticut to

ry Barnes requested FBI assistance in the apprehension of Plaintiff Ffrench, without any participation or request by Trooper Childress. *See* Def.'s aff. at ¶ 36, and Ex. F.

As to his filing of criminal charges against Plaintiff Ffrench, Trooper Childress asserts that he should be shielded by the doctrine of qualified immunity. The Court agrees. As the Supreme Court has noted,

> [I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials-like other officials who act in ways they reasonably believe to be lawful-should not be held personally liable.

*Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (*citing Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). The inquiry is whether a reasonable officer in Trooper Childress's position would have believed that there was probable cause to arrest and charge Plaintiff Ffrench for violations of the two offenses. *Malley* at 345, 106 S.Ct. 1092.

The application for charges against Plaintiff Ffrench was based upon the discovery of 45 pounds of marijuana in an otherwise suspicious package that was shipped from "Monica French" in California to "Monica French" at the 901 W. Liberty Road address. Mail addressed to the names "Monica French" and "Monica Ffrench" was found in that residence, inside a bedroom that appeared to be occupied by a female. Although Plaintiff

Ffrench did not personally accept or open the package, the Court concludes that it was objectively reasonable to believe that probable cause existed for the crimes of attempted possession with intent to distribute marijuana and attempted possession of marijuana. Therefore, Trooper Childress is entitled to qualified immunity on this claim.

### B. State Law Violations

Plaintiffs allege that throughout the investigation of Mr. Freeland, the search of 901 W. Liberty Road, and the arrests and prosecutions of Plaintiffs Wilbert Freeland and Monica Ffrench, Trooper Childress violated state laws against defamation, false arrest and imprisonment, malicious prosecution and negligence.[21] The Court need not address the merits of Plaintiffs' state law claims, however, because Trooper Childress is entitled to immunity under section 5–522 of Maryland's Courts and Judicial Proceedings Article. Section 5–522(b) provides that state personnel[22] are immune from suit and from liability for tortious conduct committed within the scope of their public duties and without malice or gross negligence. *Id.* It is clear to the Court that investigating suspects, obtaining and carrying out search warrants, and applying for criminal charges are all activities within the scope of Trooper Childress's public duties as a Maryland State Police officer. The inquiry, then, is whether Plaintiffs have created a genuine dispute as to whether Trooper Childress acted with malice or gross negligence.

---

serve Plaintiff Ffrench with a fugitive warrant. Complaint at ¶ 33.

**21.** Plaintiffs also allege perjury, but the Court notes that there is no state tort law corresponding to the crime of perjury.

**22.** Trooper Childress, as an employee of the Maryland State Police, is considered state personnel. *See,* Md.Code Ann. § 21–101(a); *Sawyer v. Humphries,* 82 Md.App. 72, 570 A.2d 341 (1990), *rev'd on other grounds,* 322 Md. 247, 587 A.2d 467 (1991).

■ The Fourth Circuit recently summarized what such a showing would entail:

Under Maryland law, the malice necessary to defeat immunity under section 5–522 is what is often referred to as "actual malice"-that is, conduct "motivated by ill will, by an improper motive, or by an affirmative intent to injure." *Shoemaker v. Smith,* 353 Md. 143, 725 A.2d 549, 560 (1999). A similarly high threshold must be crossed to establish gross negligence-the defendant must have "acted with wanton or reckless disregard for the safety of others." *Boyer v. State,* 323 Md. 558, 594 A.2d 121, 132 (1991); *cf. State v. Albrecht,* 336 Md. 475, 649 A.2d 336, 348 (1994) (defining gross negligence as conduct "so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinary careful and prudent person under the same circumstances so as to furnish evidence of an indifference to consequences." (citation and internal quotation marks omitted)).

*Young v. City of Mt. Ranier,* 238 F.3d 567, 578–79 (4th Cir.2001).

■ The heart of Plaintiffs' claim that Trooper Childress acted with malice is that he "conspired with California authorities to have airlift [sic] a box containing marijuana to the State of Maryland that had been seized by California authorities on January 22, 1997 . . . ." Pl.'s Reply at 24. Plaintiffs have produced no evidence to support this contention,[23] nor to substantiate their claim that Plaintiff maliciously and knowingly made false statements on the applications for the search warrants and criminal charges against Plaintiff

Ffrench. Even when the evidence is examined in the light most favorable to Plaintiffs, Trooper Childress's actions involved some minor errors, but nothing resembling an ill will or intent to injure Plaintiffs.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendant Trooper Childress is entitled to summary judgment as a matter of law. A separate order will issue.

### ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this day of October, 2001, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That Defendant's Motion for Summary Judgment, Paper No. 36, is hereby GRANTED;

2. That Plaintiffs' Motion for Summary Judgment, Paper No. 37, is hereby DENIED;

3. That this case is hereby CLOSED;

4. That judgment is hereby ENTERED in favor of Defendant Francis B. Childress and against Plaintiffs Wilbert H. Freeland, Christine Evadney Freeland, Monica Ffrench, Massieka Holness, and Dejourne Freeland;

5. That any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ.P. 58; and

6. That the Clerk of the Court shall mail or transmit copies of this Memoran-

---

**23.** Plaintiffs point only to the absence of records for the UPS tracking number three years after the shipment, a lack of documentation that the marijuana seized on January 22, 1997 was destroyed, and some minor discrepancies in police records of the Maryland K–9 sniff of the package.

dum and Order to Plaintiffs and all counsel of record.