**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | |
| v. | No. 05-2223 |
| | (D. New Mexico) |
| JOAQUIN SERRANO, | (D.Ct. No. CR-04-158 JC) |
| Defendant - Appellant. | |

_____

**ORDER AND JUDGMENT**[*]

_____

Before **O'BRIEN**, **McWILLIAMS**, and **McCONNELL**, Circuit Judges.

_____

Joaquin Serrano complains of the district court's denial of his motion to suppress evidence without an evidentiary hearing. At issue is whether an anticipatory search warrant was based upon probable cause and otherwise valid irrespective of the subjective concerns agents may have harbored about its efficacy. Since the validity of the warrant is measured by objective standards a hearing to probe the officer's possible reservations was unnecessary. And, since

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

the district court's analysis of those objective factors was legally correct, we affirm.

## I. Background

In January 2004, a reliable confidential source (CS) informed Special Agent Joe Mata that Serrano offered to sell him three kilograms of cocaine for $17,000.00 each. On January 11, 2004, Serrano told CS he planned to travel the next day from Roswell to Albuquerque, New Mexico, for the drug sale. Serrano said he would call CS when he arrived. On January 12, Serrano telephoned CS and stated he had three really good "cars" and would soon be in Albuquerque. Federal Agent West taped this conversation.

West then authored an affidavit seeking to obtain an anticipatory search warrant. After stating the background facts (as we have set forth in the paragraph above) the affidavit continued:

> On January 12, 2004, the CS will make telephonic contact with SERRANO and arrange a meet location . . . to negotiate the three-kilogram cocaine transaction. During the meeting, the CS will introduce an undercover agent. Subsequent to undercover negotiations, the undercover agent will direct the CS to travel to SERRANO's residence . . . to view the cocaine . . . . Upon the CS viewing the cocaine that SERRANO intends to sell to the CS and the undercover agent, the CS will exit the residence and provide surveillance agents with a pre-determined signal at which time agents will execute this search warrant.
>
> This warrant will not be effective and may not be executed until after the CS views the cocaine on January 12, 2004 at [Serrano's residence]. If the cocaine is located elsewhere this warrant will not be executed.

(Vol. I, Doc. 58, ¶¶ 10-11).

That evening, CS met Serrano and Jesus Ramirez at a restaurant where CS introduced Serrano to Undercover Agent Mata. They negotiated the sale and agreed it would take place at Serrano's home later that day. Serrano and Ramirez stated they would call when the cocaine arrived and also solicited future sales, assuring their new customers they could provide two kilograms per week.

At approximately 12:30 on the morning of January 13, 2004, CS contacted Mata to inform Mata he was with Serrano and the delivery was on its way. Shortly thereafter, Mata made a recorded telephone call to CS, who handed the phone to Serrano. Serrano told Mata to come to his house because "they" were pulling in right now. Mata declined, stating he wished to postpone the deal until later that morning. Following this conversation, Mata called CS and told him to leave Serrano's home. A few minutes later, CS met with DEA agents. CS informed them Serrano had called right after CS left the house to tell him the cocaine had arrived. Serrano threatened CS with death if the transaction was not completed. Mata then made two telephone calls to the increasingly agitated Serrano and eventually arranged for the transaction to occur at approximately ten that morning, agreeing to pay an additional $1,500.00 to atone for the postponement.

At 11:15 that morning, Mata contacted Serrano. Serrano asked whether CS was going to come to the house to see the cocaine and whether CS had the

"papers." At approximately noon, Mata received a call from Serrano who threatened he would get rid of the cocaine because he wanted to return to Roswell.[1] Mata stated CS would be there in ten minutes. CS immediately went to Serrano's house where he was shown three rectangular-shaped bricks wrapped in black and brown tape. Serrano stated they were cocaine. CS left the house and gave the pre-determined signal. The agents entered the residence, secured the premises, and gave the occupants a copy of the anticipatory search warrant.

Upon entry, the agents found a loaded black Colt .357 revolver within Serrano's reach and observed the three rectangular packages on an end table in the living room. A field test on the contents yielded a positive result for cocaine. At that point, the agents obtained a second search warrant. They then seized the 3.54 gross kilograms of cocaine, miscellaneous documents, the revolver and other items listed on the inventory return of the second search warrant.

On the return portion of the first warrant, the box designating the date and time the warrant was executed contains the typewritten word "unexecuted." The space designated for inventory taken pursuant to the warrant contains the handwritten word, "unexecuted." Instead, the second search warrant was returned and listed the inventory.

A three-count superceding indictment filed in the United States District

---

[1] The record does not contain the reason for the delay.

Court for the District of New Mexico charged Serrrano with conspiracy to possess with intent to distribute at least 500 grams of cocaine (Count One), possession with intent to distribute at least 500 grams of cocaine (Count Two), and possession of a firearm in furtherance of a drug trafficking crime (Count Three). Serrano filed a motion to suppress evidence obtained as a result of a warrantless entry into his home. The district court held a non-evidentiary hearing at which it denied the motion. Serrano then entered a guilty plea to Counts Two and Three of the indictment pursuant to a plea agreement and was sentenced to 120 months imprisonment. The plea agreement reserved Serrano's right to appeal the district court's suppression decision. This timely appeal followed.

## II. Discussion

The trial court's denial of an evidentiary hearing on a motion to suppress is reviewed for an abuse of discretion. *United States v. Chavez-Marquez,* 66 F.3d 259, 261 (10th Cir. 1995). An evidentiary hearing is required only when a defendant meets his "burden of showing that there are disputed issues of material fact." *Id.* If suppression is "improper for a reason of law appearing on the face of the motion," a hearing is not required. *Id.* In any event, the reasonableness of the search and seizure is a question of law which we review *de novo. United States v. Rowland*, 145 F.3d 1194, 1200 (10th Cir. 1998).

"[T]he right of a man to retreat into his own home and there be free from unreasonable governmental intrusion stands at the very core of the Fourth

Amendment." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal citations and quotations omitted). Accordingly, a warrant based on probable cause is generally required before executing searches and seizures inside a home and, without a warrant, such action is "presumptively unreasonable." *Id*. At issue here is an anticipatory search warrant. "An anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *United States v. Grubbs*, — U.S. —, 126 S.Ct. 1494, 1498 (2006) (quoting 2 W. LaFave, Search and Seizure § 3.7(c), p. 398 (4th ed. 2004)). As in this case, "[m]ost anticipatory warrants subject their execution to some condition precedent other than the mere passage of time — a so-called 'triggering condition.'" *Id*. The affidavit attached to the warrant to search Serrano's residence states in relevant part: "[the] warrant will not be effective and may not be executed until after the CS views the cocaine on January 12, 2004 at [Serrano's residence]. If the cocaine is located elsewhere this warrant will not be executed." (Vol. I, Doc. 58, ¶ 11).[2]

Serrano claims the district court erred in refusing to hold an evidentiary hearing in spite of its legal conclusion that the anticipatory search warrant was

_____

[2] The warrant stated the cocaine would be viewed on January 12. It was actually viewed on January 13. At oral argument Serrano conceded the date discrepancy would not invalidate the warrant under the facts of this case. *United States v. Sims*, 428 F.3d 945, 955 (10th Cir. 2005) (non-prejudicial and unintentional technical violations of the warrant do not warrant suppression). Accordingly, we do not discuss it.

valid and properly executed. He argues an evidentiary hearing would establish the agents did not enter his home pursuant to the anticipatory warrant because they had reason to believe it was not valid. He then asserts the agents' belief is evidenced by their acts. Specifically, he points to the following facts: (1) the affidavit for the second warrant made no mention of the first warrant and states the agents entered merely to secure the residence; (2) when the agents entered, they did not immediately search, but waited for a second warrant; and (3) the return on the first warrant states it was "unexecuted." Based on these events, he concludes the agents believed the anticipatory warrant was not valid, leaving the entry warrantless in violation of Serrano's Fourth Amendment rights.

We easily dispose of Serrano's argument to the extent it is based on the effect of the agents' subjective belief. The Supreme Court's recent decision in *Brigham City, Utah v. Stuart* dismantles any contention that an officer's subjective belief is relevant to our Fourth Amendment analysis. — U.S. —, 126 S.Ct. 1943, 1948 (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively,* justify the action . . . . The officer's subjective motivation is irrelevant."). Serrano cannot transform his argument by arguing the "objective" facts suggest a warrantless entry. Here, the undeniable fact is the officers obtained a warrant to enter Serrano's home to search for and seize evidence of drug trafficking. Therefore, the relevant question is whether the warrant and its

execution comported with Fourth Amendment protections and whether that determination requires an evidentiary hearing.

Serrano contends the agents reasonably believed the anticipatory warrant was invalid because too many events had to occur prior to the triggering event to sustain probable cause, and the triggering event in this case was either not met, or in the alternative, was not sufficiently specific.  A hearing is not necessary to determine the agents properly entered Serrano's home under the authority of a valid warrant.

An anticipatory warrant predicated on too many uncertain future events may fail to sufficiently establish probable cause:

> Anticipatory warrants are . . . no different in principle from ordinary warrants.  They require the magistrate to determine (1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises (3) when the warrant is executed.  It should be noted, however, that where the anticipatory warrant places a condition (other than the mere passage of time) upon its execution, the first of these determinations goes not merely to what will probably be found *if* the condition is met. (If that were the extent of the probability determination, an anticipatory warrant could be issued for every house in the country, authorizing search and seizure *if* contraband should be delivered-though for any single location there is no likelihood that contraband will be delivered.)  Rather, the probability determination for a conditioned anticipatory warrant looks also to the likelihood that the condition will occur, and thus that a proper object of seizure will be on the described premises.  In other words, for a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied.  It must be true not only that *if* the triggering condition occurs 'there is a fair probability that contraband or evidence of a crime will be found in a particular place,' but also that there is probable cause to believe the triggering

condition *will occur*. The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination.

*Grubbs*, 126 S.Ct. at 1500 (citations omitted). Because CS had to arrange a meeting between Serrano and Mata (the undercover agent), negotiations had to finalize and the parties had to agree the cocaine would be transferred at Serrano's Albuquerque residence, Serrano contends there was not probable cause to believe the triggering condition would occur. We think both prerequisites of probability were met.

The affidavit in support of the warrant states CS reported Serrano had contacted CS to arrange for the sale of three kilograms of cocaine and confirmed the price at $17,000 each, Serrano told CS he wanted to do the transaction at Serrano's residence in Albuquerque, giving a specific address, and he had "three cars" that were "really good." The terms and the location of an imminent drug deal were stated in sufficient detail for the issuing magistrate to find it probable that a large amount of cocaine would soon be at the described location. The triggering event was CS's confirmation that the expected events as detailed in the affidavit had, in fact, occurred. It was indeed probable that within an indefinite, but short, time CS would view the cocaine at the location identified in the warrant and signal the agents who would, upon entry, find contraband.

Serrano also claims the triggering event was either too vague or it never occurred because CS did not actually "view" the cocaine. Rather, because CS

-9-

saw only three rectangular opaque packages which could have contained any substance, the condition precedent was not met and therefore the warrant was "void."  The "conditions precedent to the execution of an anticipatory warrant are integral to its validity" because they "ensure[] against premature execution of the warrant," and "maintain[] judicial control over the probable cause determination and over the circumstances of the warrant's execution."  *Rowland*, 145 F.3d at 1202.  The specificity required is not "particularity" under the Fourth Amendment.  *Grubbs*, 126 S.Ct. at 1501.  The Fourth Amendment "specifies only two matters that must be 'particularly describ[ed]' in the warrant: 'the place to be searched' and 'the persons or things to be seized.'" *Id*. at 1500.  Otherwise, "the conditions governing the warrant's execution should be explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents."  *Rowland*, 145 F.3d at 1202; *see also United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1326 (10th Cir. 2003) (The triggering event must be described "with sufficient specificity to ensure that any judgment call regarding probable cause is made by a neutral magistrate and not by the enforcing officer.").  The necessary particularity "will vary based on the individual facts of each case."  *Rowland*, 145 F.3d at 1202.

Here, the warrant required CS to "view" the cocaine prior to giving the signal for entry.  The anticipatory warrant did not leave either the definition or occurrence of a triggering event to "an exercise of the officer's unfettered

discretionary judgment . . . . transfer[ring] control over probable cause determinations from the magistrate to the law enforcement officer, and thus undermin[ing] the purpose of the warrant requirement." *Hernandez-Rodriguez*, 352 F.3d at 1331. Actually viewing the cocaine is a discrete event, not a judgment call. Thus "practical, commonsense" considerations convince us the execution of the warrant was not left to the agents' unfettered discretion. *See id*. The issue is whether CS actually viewed the bargained-for cocaine, as required by the anticipatory warrant. While CS may not have seen cocaine powder, he saw three rectangular packages which Serrano and his co-defendant both specifically assured him contained one kilogram of cocaine each to be sold for $17,000 per kilogram. We think the sight of the packaged material combined with Serrano's assurances and the substantial price tag are sufficient to constitute a "viewing."[3]

In sum, the agents' subjective belief regarding the validity of the warrant

---

[3] Serrano's supplemental authority does not convince us otherwise. Serrano's cites to cases addressing the knowledge of the defendant of the presence of a controlled substance are inapposite. We are not considering a "beyond a reasonable doubt" standard but rather, a Fourth Amendment search based on probable cause. In addition, Serrano's reliance on *State v. Lee*, 624 A.2d 492 (Md. 1993) ignores the vastly different circumstances in this case. There, the Maryland Supreme Court considered an anticipatory warrant expressly providing it was to take effect "after a purchase of LSD is confirmed." *Id*. at 496. The police failed to confirm the presence of LSD even though the contraband had been purchased, brought to them, and a field test kit was available to identify the substance. If the requirements in *Lee* were applied to this case, the CS would not only have had to see the cocaine powder, but to conduct a field test in the presence of the defendant. To require such activity would not only be impractical, but quite possibly unduly dangerous as well.

-11-

was immaterial.  The warrant was valid and properly executed.  The district court did not abuse its discretion in refusing a hearing because it correctly concluded, as a matter of law, that the agents entered Serrano's residence pursuant to a valid warrant.  That said, we need not reach the government's good faith argument.

AFFIRMED.

Judge McWilliams dissents.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge